# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2916 | **DATE** | September 25, 2003 |
| **CASE TITLE** | Jessica Vilchis, et al   v   Miami University of Ohio et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]
Memorandum opinion and order entered. Defendants' motion to dismiss plaintiffs' complaint under Fed.R.Civ.P. 12(b)(4) and 12(b)(5) is denied. Defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is granted as to both defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | SEP 26 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 03 SEP 25 PM 2:04 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA VILCHIS and ANNA VILCHIS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MIAMI UNIVERSITY OF OHIO and TODD ) <br> SPOHN, ) <br> ) <br> Defendants. ) | No. 03 C 2916 <br><br> Judge Robert W. Gettleman <br><br> **DOCKETED** <br><br> SEP 2 6 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jessica Vilchis and Anna Vilchis, residents and citizens of Illinois, have filed the instant action against defendants Miami University, an entity of the State of Ohio, and Todd Spohn, a resident and citizen of Ohio. Plaintiffs allege that defendants' negligent conduct has resulted in physical injury to Jessica Vilchis for which they are entitled to damages.

Defendants removed the instant action from the Circuit Court of Cook County, Illinois, to this court pursuant to 28 U.S.C. § 1441. The court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Currently before the court are defendants' motions to dismiss plaintiffs' complaint for: (1) improper service pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5); (2) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and the related doctrines of fiduciary shield and judicial comity; and (3) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the court denies defendants' motion to dismiss the instant complaint for untimely service. Defendants' motion to dismiss for lack of personal jurisdiction is granted with respect to both defendants, however, effectively mooting defendants' Rule 12(b)(6) motion.

## FACTS

Jessica Vilchis ("Jessica") was recruited from high school to Miami University to become a member of the university's Women's Diving Team coached by defendant Todd Spohn. Miami University sent representatives to Jessica's high school on at least two occasions each year to provide information and acquaint prospective students with the university.

In addition to Miami University's student recruiting efforts, Spohn attempted to track and recruit top-performing high school athletes in Ohio and other states. In 1999, Jessica's high school diving coach, Rick Carlson, contacted Spohn and provided information about Jessica. Spohn requested, and was provided, a videotape of Jessica's diving. After viewing the tape, Spohn and Carlson continued communication via email. Spohn did not personally meet Jessica in Illinois. He traveled to Illinois only to coach the Miami team in competition once in 1999 and to attend a 3-day coaching clinic once in 2001. Spohn did communicate with Jessica by telephone at her home in Illinois, and ultimately arranged for her and her mother, Anna, to travel to Miami University for a recruiting trip scheduled for March 31, 2000, through April 2, 2000. According to Jessica's declaration, during their visit, she and Anna spoke to Spohn about "the diving team, and how [Jessica] would fit in," as well as financial aid that would be available to her.

Jessica accepted a position on Miami University's traveling diving team beginning immediately after high school in 2000. She paid for the majority of her college expenses with a need-based multicultural scholarship granted by Miami University, supplemented with federal loans and some personal funds.

While a part of the team, Jessica regularly participated in diving practice under the direction of Spohn. According to plaintiffs' complaint, at a practice on October 7, 2000, Jessica

2

dived from a 7-meter platform, heard a crack in her neck, and felt pain as she entered the water. She allegedly informed her coach and teammates and continued diving until prevented by the pain and excused from practice. The team's assistant athletic trainer provided preliminary treatment for Jessica. X-Rays done a few days later at a local hospital showed a fracture in her neck.

Jessica underwent surgery on her neck at an Illinois hospital in December 2000. She did not practice or compete with the team the remainder of the 2000 season. In December 2001, after competing once in the 2001 season, Jessica left the Women's Diving Team. She is currently a student at Miami University.

Plaintiffs filed a complaint on Oct. 7, 2002, the last day within the applicable statute of limitations period, in the Circuit Court of Cook County, Illinois. In the original complaint, plaintiffs erroneously reversed the order of the defendants and plaintiffs in the caption. At a hearing in the circuit court on Feb 7, 2003 (after several continuations the previous month), plaintiffs were given leave to file and did file a revised version of the complaint with a corrected caption on that date. The circuit court also issued orders excusing plaintiffs from serving copies of their motion to correct the caption, and continuing the case until March 24, 2003, "to assure service [of the corrected complaint] is completed." On March 24, 2003, the circuit court continued the matter to May 12, 2003. Defendants were served with the corrected complaint on April 1, 2003, less than two months after it was filed.

## DISCUSSION

1. **Service of Process**

Defendants first contend that plaintiffs failed to effectuate service of process sufficient to avoid dismissal under Fed. R. Civ. P. 12(b)(4) and 12(b)(5). Defendants' argument is premised on Illinois Supreme Court Rule 103(b), which states:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitation has not run. The dismissal may be made on the application of any defendant or on the court's own motion.

Plaintiffs rely solely on the Illinois Supreme Court case *Segal v. Sacco,* 136 Ill.2d 262 (1990), to support their argument that their twenty-six week (nearly 6 month) delay in serving defendants falls within the realm of reasonable diligence. The delay in *Segal* lasted nineteen weeks, and took place entirely after the running of the limitations period. The Illinois Supreme Court concluded that the inadvertent delay "did not threaten the circuit court's ability to 'proceed expeditiously to a just resolution of the matter before it.'" *Segal,* 136 Ill.2d at 288, quoting *O'Connell v. St. Francis Hospital,* 112 Ill.2d 273, 282 (1986). According to the *Segal* court, dismissal of a cause with prejudice under Rule 103(b) is a "harsh penalty" which is justified when the delay in service of process is of a length which "denies a defendant a fair opportunity to investigate the circumstances upon which liability against [the defendant] is predicated while the facts are accessible." *Segal,* 136 Ill.2d at 288.

According to the *Segal* court, different factors that a court may consider in determining whether to allow or deny a Rule 103(b) motion include, but are not limited to: (1) the length of time used to obtain service of process; (2) the activities of the plaintiff; (3) the plaintiff's

4

knowledge of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of the pendency of the action as a result of ineffective service; (6) special circumstances which would affect the plaintiff's efforts; and (7) actual service on the defendant. *Segal*, 136 Ill.2d at 287.

With regard to factors (3) and (4), at the time of service, Jessica attended defendant Miami University where the diving team was still coached by defendant Spohn. When service was attempted, defendants were readily found and service was accepted without interference. Factors (3) and (4) favor dismissal because plaintiffs had knowledge of defendants' location and defendants' whereabouts were easily ascertained. Factor (5) also favors dismissal because, although defendants do not deny having knowledge of the pending action, and it may be reasonable to assume that a neck injury on defendants' property may serve some notice of a forthcoming claim, no evidence exists that defendants ever had actual knowledge that plaintiffs filed a complaint. Factor (7) weighs in favor of plaintiffs because actual service was made on defendants. Factors (1), (2), and (6), the activities of the plaintiff, special circumstances affecting plaintiff's efforts, and the length of time used to obtain service, require more thorough examination.

With regard to factor (1), Rule 103(b) does not denote a specific time limitation within which defendants must be served; instead, it seeks to promote the expeditious handling of suits by giving the court wide discretion to dismiss when service is not effected with reasonable diligence. *Cannon v. Dini*, 226 Ill.App.3d 82, 86 (Ill. App. 1st Dist. 1992); *Segal*, 136 Ill.2d 282, 285-86. In the instant case, plaintiffs filed their complaint on Oct. 7, 2002, the last day of the statute of limitations period, and did not serve defendants with their amended complaint until

April 1, 2003. When considered in light of the plaintiff's activities and the procedural posture of the instant case - specifically, the two continuances entered by the state court - the court concludes that this delay is not sufficiently egregious to support dismissal.

Plaintiffs offer an explanation of inadvertent forgetfulness for their apparent lack of diligence in attempting service for the three months between the filing of their initial complaint on October 7, 2002, and their first attempt to file their revised complaint on January 7, 2003. Although a faulty memory is arguably inexcusable, it is, as plaintiffs point out, not without precedent. *See Segal*, 136 Ill.2d at 288.

For the period between January 7, 2003, and service of process on April 1, 2003, plaintiffs were engaged in judicial proceedings. Plaintiffs informed the court that process was not served, attended status hearings, revised the initial complaint, and served defendants three weeks subsequent to filing the revised complaint. Plaintiffs' attorney offers a personal visual health problem and a required reordering of the caption on the initial complaint as explanation for the delay in service of the revised complaint. Both are supported by evidence in the record. Further, the state court was aware of the delay in service and did not dismiss plaintiffs' case or order plaintiffs to complete service by a specified date. Rather, the state court continued the instant case to March 24, 2003, "to assure service [of the corrected complaint] is completed," and then continued the case again to May 12, 2003.

The instant case is distinguished from other Rule 103(b) case law dismissals because plaintiffs did not fail to attempt to serve defendant, there is an explanation as to why the fact of filing was kept from defendant, and finally, the record is not replete with evidence that plaintiff failed to exercise diligence, other signs of delay, or any evidence of intentional dilatory behavior

on the part of plaintiff. *See, e.g., Kreykes Elec., Inc. v. Malk & Harris*, 297 Ill. App. 3d 936, 942 (Ill. App. 1st Dist. 1998) (appellate court affirmed trial court's Rule 103(b) dismissal in which "it was shown that plaintiff intentionally chose not to cause summons to issue, caused its case to be dismissed for want of prosecution, delayed in moving to vacate that dismissal, and again delayed nearly one entire month before causing summons to issue after its case was reinstated."); *Paglis v. Black*, 178 Ill. App. 3d 1062, 1064 (Ill. App. 3d Dist. 1989) (affirming Rule 103(b) dismissal in which "plaintiffs conceded that they knew where the defendants' offices were located, but offered no explanation for the delay [in service]."). The court thus finds that factors (1), (2) and (6) favor plaintiffs.

There is no evidence that the activities of the plaintiffs circumvented the statute of limitations or denied the defendants a fair opportunity to investigate. Moreover, defendants have filed affidavits from the head coach, university records, and research on Vilchis' current activities, leading the court to further believe defendants have not been hampered in their access to facts.

The court therefore concludes that the delay in the service of process does not defeat the purpose of Rule 103(b), and "ordinarily... controversies should be resolved on their merits after both sides have had their day in court." *Cannon v. Dini*, 226 Ill. App. 3d 82, 86 (2nd Dist. 1992). All of these factors, viewed in light of the circumstances of the instant case, demonstrate that plaintiffs have been reasonably diligent in serving defendants. Thus, defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(4) and 12(b)(5) is denied.

## 2. **Personal Jurisdiction**

Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is more compelling, however. When evaluating personal jurisdiction over a defendant, the court can consider affidavits submitted by the parties, and "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

In their response to defendants' motion to dismiss, plaintiffs concede that they "do not claim that defendants are subject to general jurisdiction" in Illinois, leaving only specific jurisdiction at issue with respect to the instant motion. *See Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (considering propriety only of specific jurisdiction when plaintiff failed to assert that Illinois could assert general jurisdiction over defendant). To establish specific jurisdiction over defendants Miami University and Spohn, plaintiffs must demonstrate that, (i) defendants have committed some act enumerated in the Illinois long-arm statute, 735 ILCS 5/2-209, or have otherwise established "minimum contacts" with Illinois sufficient to satisfy due process, and (ii) this action arises from those minimum contacts. *See Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (when analyzing whether personal jurisdiction exists over a defendant, "the suit must 'arise out of' or 'be related to' [defendant's] minimum contacts with the forum state.").

Plaintiffs assert that defendants' recruitment of Jessica amounts to "transaction of any business" within the meaning of 735 ILCS 5/2-209(a)(1), sufficient to confer personal

8

jurisdiction over defendants in the instant case.[1] The parties further agree that, to determine whether that section applies, the court should consider: (i) who initiated the transaction; (ii) where the business relationship was formed; and (iii) where performance was to take place. *Gordon v. Tow*, 148 Ill. App. 3d 275, 280-281 (Ill. App. 1st Dist. 1986).

Plaintiffs do not dispute that Jessica's high school coach, Rick Carlson, initially contacted Spohn about Jessica's diving ability, rather than the other way around. Thus, neither of the defendants initiated Miami University's recruitment of Jessica. Carlson's contact with Spohn led to multiple e-mail exchanges, after which Carlson provided Spohn with a videotape of Jessica's diving. Spohn and Jessica spoke shortly thereafter, and arranged for Jessica and Anna to visit Miami University from March 31 through April 2, 2000. According to Jessica's declaration, during their visit to Ohio, she and Anna spoke to Spohn about "the diving team, and how [Jessica] would fit in," as well as the financial aid that would be available to Jessica.[2] At no time did Spohn or any other representative from Miami University visit Jessica in Illinois. From

---

[1] Plaintiffs further allude to the potential applicability of 735 ILCS § 5/2-209(a)(2), the commission of a tortious act within Illinois, arising from defendants' alleged promise of a four-year athletic scholarship to Jessica. In support thereof, plaintiffs cite to *Birnberg et al. v. Milk Street Residential Associates Limited*, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003), in which the court noted that the mailing of an allegedly false and misleading memorandum into Illinois, which caused the plaintiffs to incur huge tax liabilities, supported the exercise of specific jurisdiction under the "tortious act" prong of Illinois' long-arm statute. In contrast to *Birnberg*, however, plaintiffs in the instant case have not identified any alleged mailing that would constitute a tort (or otherwise articulated the contours of their "tortious act" argument). The court thus concludes that 735 ILCS § 5/2-209(a)(2) is inapplicable to the instant dispute.

[2] Spohn denies that Jessica received any athletics-related aid. According to Spohn, Jessica instead qualified for a substantial need-based scholarship, which covered most of her room and board, and the remainder was covered through a combination of federal loans and personal funds. Plaintiffs do not dispute that Jessica's scholarship monies were not designated for use by the athletic department, but insist that it was Spohn who provided the financial aid package to induce her to go to Miami University.

these facts, it appears that Jessica's relationship with Miami was formed primarily in Ohio. *Compare Barile v. University of Virginia*, 2 Ohio App. 3d 233, 236 (Ohio App. 8th Dist. 1981) (finding that Ohio court had personal jurisdiction over University of Virginia, which "aggressively pursued" Ohio football resident within the state of Ohio by visiting his home on two occasions to recruit him).

Notwithstanding plaintiffs' argument that the diving team traveled to Illinois to compete, specifically to Northern Illinois University, plaintiffs cannot seriously contend that Jessica's performance on the team was going to take place primarily in Illinois. Miami University's diving team is based in Ohio and practices in Ohio. Further, Spohn, the diving team's coach, stated in his declaration that he had traveled to Northern Illinois University only once in the past five years to coach the women's team. Thus, even if Jessica's participation in the diving team required her to travel to locations outside of Ohio on occasion, it is clear that the majority of her team-related duties were not going to be performed in Illinois. *See, e.g., Burgess v. Michigan State University*, 1996 WL 665939, at *2 (Wash. App. Div. 1 November 18, 1996) (student-athlete's letter of intent to enroll at Michigan State University on four-year scholarship did not "contemplate any continuing obligations or relationships in [Washington state].").

For these reasons, the court concludes that defendants' contacts with Jessica in Illinois did not constitute the transaction of business sufficient to confer personal jurisdiction over defendants in the instant case under 735 ILCS 5/2-209(a)(1).[3]

---

[3]Even if the court concluded that Miami University's recruiting efforts in Illinois were sufficient minimum contacts under 735 ILCS 5/2-209(c), which has not been asserted by plaintiffs, the court would still conclude that it does not have personal jurisdiction over defendants. To the extent that Miami University may conduct broader recruiting efforts in

(continued...)

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(4) and 12(b)(5) is denied. Defendants' motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is granted as to both defendants.

**ENTER:** September 25, 2003

Robert W. Gettleman
United States District Judge

---

³(...continued)
Illinois by sending representatives to Illinois to watch promising high school athletes, plaintiffs do not contend that those activities ever brought Spohn or Miami University representatives into contact with Jessica. Rather, the extent of Jessica's recruiting contacts with Spohn and Miami University came about as a result of Carlson's phone call to Spohn, and plaintiffs have not contended that any representatives of Miami University ever visited Jessica in Illinois. Thus, Jessica's participation on the diving team and her subsequent injury, which is the sole focus of her complaint, did not "arise from" Miami University's recruiting efforts in this state.